IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GERALD LABREC,

           Plaintiff,

v.

WISCONSIN AND SOUTHERN RAILROAD COMPANY,

           Defendant.

OPINION and ORDER

17-cv-828-jdp

---

Plaintiff Gerald LaBrec is suing his employer defendant Wisconsin and Southern Railroad Company under the Federal Employers' Liability Act for failing to prevent an injury that LaBrec says he sustained from using a hydraulic wrench on the job. Wisconsin and Southern calls itself "WSOR," so the court will do the same. WSOR has filed a motion for summary judgment on the grounds that LaBrec has failed to adduce evidence on two elements of his claim: that WSOR acted negligently and that its actions or inactions contributed to LaBrec's injury. Dkt. 9. Because a reasonable jury could find that LaBrec has satisfied both of those elements under FELA, the court will deny WSOR's motion for summary judgment.

ANALYSIS

FELA was enacted at the beginning of the twentieth century to protect railroad workers from the special hazards of the job. *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014). The statute has the same elements as a negligence claim—duty, breach, causation, and damages—but "the quantum of evidence required to establish liability in an FELA case is much less than in an ordinary negligence action." *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990). Specifically, the causation requirement is met if "employer

negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957). Both the Supreme Court and the court of appeals have repeatedly emphasized FELA's remedial nature and that granting summary judgment is the exception and not the rule in a FELA case. *E.g.*, *Lavender v. Kurn*, 327 U.S. 645, 653 (1946) (judgment as a matter of law is appropriate "[o]nly when there is a complete absence of probative facts to support the" plaintiff's claim); *Wilson v. Chicago, Milw., St. P., & Pac. R.R. Co.*, 841 F.2d 1347, 1353 (7th Cir. 1988) ("The evidence required for a finding of negligence [under FELA] dictates a corresponding 'slightest' hurdle for avoiding [summary judgment.]").

In this case, WSOR contends it is entitled to summary judgment because no reasonable jury could find that it was negligent or that it caused LaBrec's injury. The court will limit its analysis to those elements. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.").

Some of the basic facts of the case are undisputed. LaBrec works for WSOR as a heavy equipment operator. His duties include hauling equipment, driving trucks, operating the backhoe, repairing and inspecting equipment, and assisting section crews.

On June 25, 2015, LaBrec was directed to replace one-inch bolts on a joint bar using a two-handled hydraulic wrench that was powered by a truck. Below is an example of a two-handled hydraulic wrench:



LaBrec had to ask a manager and two other employees how to turn on the wrench's hydraulic system because he didn't know how. Approximately 90 minutes after replacing the bolts, LaBrec felt excruciating pain in his right wrist after climbing on a truck and attempting to remove a spike maul (weighing ten pounds) out of its holder. LaBrec asked his supervisor to take him to the hospital. Since then, LaBrec has had multiple surgeries on his wrist.

LaBrec's theory of the case is fairly straightforward. He says that he injured his right wrist from trying to control the wrench while removing the bolts and that WSOR was negligent in failing to prevent his injury in three ways. First, WSOR did not provide him any training on how to handle the hydraulic wrench he used. Although he had used hydraulic wrenches before, he had rarely used the two-handled kind, which LaBrec says are more powerful and harder to stabilize than the wrenches he had used in the past.

Second, LaBrec says that WSOR failed to maintain the hydraulic system of the truck that powered the wrench to make sure that it was operating at a safe level of pressure. Third, LaBrec says that WSOR failed to give him any means to compensate for the lack of training and greater pressure. Citing testimony of other WSOR employees, LaBrec says that WSOR has an upright handle that an employee can use in conjunction with a hydraulic wrench. Dkt. 16 (Schultz Dep. 14:1–16:12) and Dkt. 17 (Schaalma Dep. 75:15–76:8). The handle allows the

employee to stand upright while using the wrench to better control it and take stress off the employee's hands. An example of this type of handle is shown below:



WSOR did not provide one of those handles for LaBrec to use.

As a result of these alleged failures, LaBrec says that he had to use great force to keep the wrench stable and from "spinning when encountering resistance." Dkt. 22, ¶ 64. To keep the wrench stable, LaBrec bent over at the waist and used his left hand to hold the front handle of the wrench and his right hand to hold the rear handle. But he did not have "good leverage" from this position, so he had to use even more force to maintain stability. And the twisting of the wrench when tightening a bolt or when the bolt would break loose was controlled "almost entirely" by his right hand. LaBrec believes that the injury to his right wrist was caused by the force he had to use to keep the wrench stable. Dkt. 22, ¶¶ 55–74.

LaBrec's claim could be stronger. For one thing, he did not submit an expert report to help him show either that WSOR was negligent or that WSOR's negligence caused his injury. Instead, he essentially tried to act as his own expert, providing his own technical analysis of the function of hydraulic wrenches in his affidavit. He did not purport to be an expert on hydraulic wrenches, which would be inconsistent with his claim that he did not how to use one. Instead, he relied on an owner's manual. Dkt. 22-7. But he did not authenticate the manual or even show that the manual applies to the wrench at issue in this case. More

fundamentally, the manual is hearsay and LaBrec does not identify a qualifying exception to the hearsay rule.

As to the issue of causation, LaBrec relied in part on his own testimony about what health care providers told him, Dkt. 26, ¶¶ 123, 126, but that is also hearsay. He also says that his emergency room records show that the wrench caused his injury, but he does not cite those records, *id.*, ¶ 122, so that testimony violates the best evidence rule. WSOR submitted one page of LaBrec's hospital records, but that document does not include conclusions from medical staff that LaBrec's use of the wrench caused his injury. Rather, the document includes a summary of what *LaBrec* told medical staff, including that his injury "resulted from a repetitive motion, using [a] heavy impact wrench." Dkt. 12. So that record is simply a hearsay statement from LaBrec himself.

Despite the limitations of LaBrec's evidence, the court is persuaded that LaBrec's own lay testimony that is based on personal knowledge and the testimony of the other WSOR employees is sufficient to create genuine issues of material fact that a jury must resolve as to both negligence and causation. "[U]nder FELA, circumstantial evidence alone can support a jury verdict, and expert testimony is unnecessary where the matter is within the realm of lay understanding and common knowledge." *Lynch v. Ne. Reg'l Commuter R.R. Corp.*, 700 F.3d 906, 914 (7th Cir. 2012). And FELA "vests the jury with broad discretion to engage in common sense inferences regarding issues of causation and fault." *Harbin*, 921 F.2d at 132. In fact, the court of appeals has stated that even an "implausible" or "outlandish" theory of causation may be sufficient under FELA. *Lynch*, 700 F.3d at 918. In this case, the court concludes that the inferences that LaBrec is asking the factfinder to draw are not so complex that expert testimony is required.

As to negligence, WSOR does not cite any evidence disputing LaBrec's testimony that WSOR did not show him how to use and control a hydraulic wrench. It does not allege that it regulated the pressure of the truck that powered the wrench to ensure that it was safe. And it does not deny that it could have provided an upright handle or that such a handle would have made the job safer under the circumstances of this case. A reasonable jury could find that WSOR was negligent by failing to take any of those actions.

As for causation, LaBrec testified that he was putting great stress on his right wrist while using the wrench and that he engaged in no other strenuous work the day that he was injured, so there is no other likely cause. Courts have concluded that similar common-sense inferences are within the grasp of a lay jury in a FELA case. *E.g.*, *Ulfik v. Metro-N. Commuter R.R.*, 77 F.3d 54, 59 (2d Cir. 1996) (reasonable jury could infer without expert testimony that prolonged exposure to paint fumes caused dizziness eight days after exposure), cited with approval in *Lynch*, 700 F.3d at 915; *Heater v. Chesapeake & O. Ry. Co.*, 497 F.2d 1243, 1247 (7th Cir. 1974) (reasonable jury could infer that lifting a heavy object could have caused the plaintiff's back pain even though plaintiff "could not say whether the pain arose from lifting or whether his foot also slipped or he bent over at an odd angle"). *See also Brown*, 765 F.3d at 771 (medical expert not necessarily required in FELA case when the plaintiff suffers "discrete, easily comprehensible injuries"). Although WSOR says that LaBrec could have been injured by attempting to pick up the spike maul or climbing on the truck, a reasonable jury could find that the more strenuous activity of using the hydraulic wrench played at least some causal role in producing LaBrec's alleged injuries.

WSOR says that it is entitled to summary judgment for several additional reasons, but none of them are persuasive. First, WSOR says that the testimony in LaBrec's affidavit

summarized above is inconsistent with deposition testimony in which LaBrec said, "not that I can recall," in response to a question whether the wrench "slipp[ed] or twist[ed] unexpectedly." Dkt. 16 (LaBrec Dep. 131:23–24). WSOR relies on the "sham-affidavit" rule to support its request to strike the affidavit, but that rule is a narrow exception to the more general rule that "[c]hanges in testimony normally affect the witness's credibility rather than the admissibility of the testimony." *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016). So a court may disregard a statement under the sham-affidavit rule only if the affidavit "contradicts the affiant's previous testimony." *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015). *See also Gullick v. Ott,* 517 F. Supp. 2d 1063, 1075 (W.D. Wis. 2007) ("[T]he court of appeals has admonished district courts not to disregard testimony unless the contradiction is unmistakably clear."). The rule does not apply if the previous testimony was "ambiguous, confusing, or the result of a memory lapse." *Cook*, 803 F.3d at 298.

In this case, LaBrec's affidavit and deposition do not fall within the scope of the sham-affidavit rule. LaBrec did not say in his affidavit that the wrench slipped or twisted unexpectedly. Rather, he said that he had to use great effort in order to control the wrench. The two statements are not necessarily inconsistent. And WSOR did not ask LaBrec to elaborate on his statement during his deposition, so the statement does not provide a basis for striking LaBrec's declaration.

For a second additional basis for granting summary judgment, WSOR says that LaBrec has not adduced any evidence that anything was wrong with the wrench. But LaBrec testified that the torque on the wrench was stronger than any wrench he had used before, Dkt. 22, ¶ 65, supporting the inference that WSOR had failed to regulate the pressure on the hydraulic system. And even if the wrench was functioning normally, that has nothing to do with the need

for training LaBrec how to effectively handle such a powerful wrench without injury or providing tools to make the wrench safer.

Third, WSOR says that LaBrec received training on using pneumatic wrenches and that he had used hydraulic wrenches before. But, again, LaBrec says that the wrench he used on June 25, 2015, was more powerful than any other wrench he had previously used. Although LaBrec had used a two-handled hydraulic wrench before, it was fewer than five times, and neither side cites any evidence that anyone had shown him how to properly control the wrench. The fact that LaBrec had used a similar wrench in the past has limited probative value in the absence of evidence that LaBrec knew how to use the wrench *correctly*. In fact, one of WSOR's witnesses testified that the difficulty of controlling the hydraulic wrench "depend[ed] on how [he] held it." Dkt. 19 (Schultz Dep. 15:2–14).

Finally, WSOR says that it had no obligation to provide an upright handle for LaBrec to use, citing *Taylor v. Illinois Central Railroad Co.*, 8 F.3d 584, 586 (7th Cir. 1993), in which the court stated that "proof of a safer alternative is not necessarily proof of negligence." That is obviously true, but that general principle is not dispositive in this case. "[I]n a negligence case the risk of injury has to be weighed against the cost of averting it." *Mesman v. Crane Pro Services*, 512 F.3d 352, 354 (7th Cir. 2008). In other words, when the employer can make the job significantly safer at little or no cost, there are few excuses for failing to implement the safety step.

It does not take an expert to understand that it could be difficult to control a powerful machine while bent over at the waist and without means other than one's own hands to stabilize the machine. *See Henry v. CSX Transp., Inc.*, No. 10 CV 01056, 2012 WL 1365649, at *8 (S.D. Ohio Apr. 19, 2012) (employee's FELA claim supported by employee's testimony

"that the most difficult part of the job, with respect to his hands and wrists, as track inspector was the sledgehammer and the hydraulic wrench"). And WSOR does not deny that it could have easily provided an upright handle to LaBrec. Under these circumstances, a reasonable jury could find that it was negligent for WSOR not to take such a simple and inexpensive step. *See Heater*, 497 F.2d at 1247 (reasonable jury could find that requiring plaintiff to lift heavy objects was negligent when "[a] mechanical crane could . . . have been used to reload the yokes" even though "[s]uch a procedure might have been inefficient in the sense that it would have taken more time").

LaBrec's evidence of WSOR's alleged negligence may not be overwhelming, but that is not required to prove a FELA claim. Because this is not one of "the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury," *Rogers*, 352 U.S. at 510 (footnote omitted), the court will deny WSOR's motion for summary judgment.

ORDER

IT IS ORDERED that defendant Wisconsin and Southern Railroad Company's motion for summary judgment, Dkt. 9, is DENIED.

Entered October 24, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge